(88 South. 571)

CARTER v. STATE. (8 Div. 298.)

(Supreme Court of Alabama. April 7, 1921.)

1. Homicide ⬅️203(3)—Dying declaration, after deceased informed by doctor no chance for him to live, supported by proper predicate.

In a prosecution for murder, a dying declaration of deceased, after he had stated he was going to die and the doctor told him there was not a chance for him to live, was admissible.

2. Criminal law ⬅️696(7)—Motion to exclude testimony as to dying declaration properly overruled, if any part of answer outside proper scope of dying declaration.

In a prosecution for murder, a motion to exclude a dying declaration of deceased, being addressed to the answer of the witness as a whole, if any part of the answer was outside the proper scope of a dying declaration, was properly overruled.

3. Witnesses ⬅️240(2)—Court's permission of leading question not revisable.

It is within the discretion of the court to permit a leading question, and such rulings are not revisable.

4. Criminal law ⬅️1043(1)—Assignment of specific ground of objection waives other grounds.

The assignment of a specific ground of objection to a question constitutes a waiver of all other grounds.

5. Homicide ⬅️156(1)—Statement of accused to deceased after shooting held admissible to show hostility before shooting.

In a prosecution for murder, evidence that defendant said to deceased, about five minutes after he was shot, while he was lying on the ground, "You d——d fool; stand up"—was properly received, as evincing hostility to deceased antedating the shooting.

6. Criminal law ⬅️412(3)—Statement of defendant to physician after killing held competent, being incriminatory and not illegal per se.

In a prosecution for murder, a statement by defendant to a physician two or three hours after the killing that "you don't know a thing about it" was competent and relevant, being incriminatory and not illegal per se.

7. Criminal law ⬅️412(1)—Statement of accused, if incriminatory, need not be of res gestæ.

In a prosecution for murder, a statement of defendant need not be of the res gestæ, if incriminatory.

8. Witnesses ⬅️40(2)—Competency of eight year old girl as witness for trial court.

In a prosecution for murder, the competency of an eight year old girl as a witness was for the trial court, and the appellate court cannot say that error was committed in allowing her testimony to go to the jury.

9. Homicide ⬅️166(1) — Testimony of eight year old daughter of deceased as to defendant's visits to their house admissible to show motive.

In a prosecution for murder, testimony of deceased's eight year old girl that defendant frequently came to their house when her father was away was admissible to show a motive on the part of defendant, and as an introduction to the child's testimony as to a threat made by defendant against deceased on such a visit.

10. Homicide ⬅️294(2) — Instruction to find not guilty if accused too drunk to form intent to take life properly refused, in view of defendant's testimony.

In a prosecution for murder, an instruction that if the jury had a reasonable doubt as to whether defendant was sufficiently sober to form a specific intent to take life it could not find him guilty was properly refused; defendant's own testimony being sufficient to exclude the idea, and he having the full benefit of it in the court's oral instructions to the jury.

11. Homicide ⬅️307(4)—Instructions to find not guilty if no intent to kill, erroneous, as excluding conviction of manslaughter in second degree.

In a prosecution for murder, instructions that unless the jury believed beyond a reasonable doubt that the defendant fired the shot intentionally that killed deceased he was not guilty were properly refused, as calling for an acquittal of any offense, whereas defendant might have been convicted of manslaughter in the second degree, though he did fire without intent to kill.

12. Criminal law ⬅️829(1)—Instructions properly overruled, where fully covered by instruction given.

In a prosecution for murder, instructions that the carrying of a pistol on the occasion of the shooting by defendant was not a proximate cause of the killing, if proper, were not prejudicial, being fully covered by an instruction given.

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. Criminal law ⬦⟹307(4) — Instruction defendant not guilty, though he aimed pistol at deceased, if he had no intent to shoot, properly refused, as excluding conviction for manslaughter.**

In a prosecution for murder, an instruction to find defendant not guilty, though he aimed his weapon, if he had no intention to shoot, was properly overruled, as he might have been guilty of manslaughter in so doing, Code 1907, § 6893, making it a criminal offense to present any firearm at another.

**14. Homicide ⬦⟹307(2)—Not error to refuse charges as to degrees of homicide, as jury might convict of any degree.**

In a prosecution for murder, there was no error in refusing charges as to the several degrees of unlawful homicide; it being open to the jury to convict of any degree.

Appeal from Circuit Court, Limestone County; O. Kyle, Judge.

Charley Carter was convicted of murder in the second degree, and he appealed. Affirmed.

The party killed was Dave Robinson, and his brother testifying, stated that he had a conversation with Dave before the docter examined him, in which Dave stated that he was going to die. The doctor then examined him, and told him that there was not a chance for him, and Dave then made a statement to the doctor in presence of witnesses. The witness was then permitted to detail the statement made. The witness Jarrett testified that he did not see the shooting, but that he saw the defendant and the deceased about five minutes after the shooting, and that the defendant and his brother were trying to get the deceased to stand up. The solicitor asked the following question, "To refresh your recollection, didn't defendant say to deceased, 'God damn you; stand up; you can walk?'" This was objected to because leading. Objection being overruled, the witness answered, "I think the way he said it was, 'You damn fool; stand up.'" The defendant then moved the court to exclude the answer, as it was immaterial and irrelevant and because not an answer to the question put to him.

Dr. Allen stated that two or three hours after the killing he had a conversation with the defendant, in which he said to the defendant, "Charley, I am sorry this happened." To which the defendant did not reply. Witness then said, "Both of you got my sympathy," and defendant replied, "See, you don't know a thing about it."

The witness Louise Roberts stated that she was eight years old; that she believed in a good place and a bad place hereafter; that she went to Sunday school; and if she told a lie she would go to the Bad man.

The following charges were refused to the defendant:

(4) "The presumption in this case is that the defendant is innocent until the state has proven beyond all reasonable doubt that he is guilty, and if the jury have a reasonable doubt, growing out of the evidence, as to whether he was sufficiently sober to form a specific intent to take life, then the jury cannot find the defendant guilty of murder."

(5) "Unless you believe from the evidence, beyond a reasonable doubt, that the defendant fired the shot intentionally that killed deceased, you should find the defendant not guilty."

(6) "If the shot that killed deceased was accidently fired, then you cannot convict the defendant."

(11) "The burden is on the state to show that the killing of the deceased by this defendant was intentionally done."

(13) "I charge you that it was a violation of law for the defendant to have carried a pistol concealed about his person, or to have carried it about his person on premises not his own, or not under his control, and on this occasion. But I further charge you that as a matter of law such carrying of a pistol on the occasion of the shooting of the deceased would not render the defendant guilty in this case unless such carrying of the pistol was the proximate cause of the shooting or the killing, and I charge you that under the evidence in this case, such carrying of the pistol on this occasion was not the proximate cause of the shooting or the killing."

(14) Practically the same as 13.

(17) Practically the same as 13.

(15) "Before you can convict the defendant in this case, you must be satisfied beyond reasonable doubt, from the evidence in the case, that defendant had a criminal intent to do the killing."

(19) "Neither the intoxication of the defendant on this occasion nor the carrying of the pistol by him concealed about his person, or on the premises where the shooting occurred, constituted the proximate cause of the shooting and the killing."

(20) Practically the same as 19.

(23) "Before you can convict the defendant in this case, you must be satisfied from the evidence in the case to a moral certainty that the defendant had a criminal intent to do the killing, or that the defendant wantonly did the killing, and I charge you that to constitute the acts or conduct of defendant on this occasion, in the handling of the pistol, and shooting of the deceased, as being one, you must believe from the evidence in the case that the defendant at the time was conscious of his conduct, and, without having the intent to injure, he was at the time conscious, from his knowledge of the existing circumstances and conditions, that his conduct would likely or probably result in injury, and I charge you that a mere error of judgment on the part of the defendant on this occasion as to the result of his acts, having at the time no evil intent, and not being conscious of probable result, would not amount to wantonness within the meaning of the law, and if after a consideration of all the evidence in the case you have a reasonable doubt as to whether or not the defendant at the time was conscious of the probable result, or if you have a reasonable doubt from the evidence as to whether or not he intentionally did the killing, I charge

⬦⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

you that in either event you should acquit the defendant."

(27) "A mere error in judgment on the part of the defendant on this occasion as to the manner of handling the weapon, and to the result of his acts, would not authorize a conviction in this case."

(30) Same as the first part of charge 23.

J. G. Rankin, of Athens, for appellant. No brief reached the Reporter.

J. Q. Smith, Atty. Gen., and W. R. Walker, of Athens, for the State.

The predicate was sufficiently laid for a dying declaration. 139 Ala. 74, 36 South. 138, 101 Am. St. Rep. 17; 152 Ala. 38, 44 South. 619. The motion to exclude went for the entire answer, and hence was not good. 190 Ala. 10, 67 South. 237; 180 Ala. 576. The court may permit leading questions. 171 Ala. 112, 55 South. 156, Ann. Cas. 1913A, 1103; 87 Ala. 24, 5 South. 829. In any event, the evidence was admissible. 146 Ala. 66, 41 South. 274. Dr. Allen's statement was competent. 194 Ala. 11, 69 South. 941, 2 A. L. R. 509; 181 Ala. 35, 61 South. 336. The qualification of the infant was for the court. 109 Ala. 64, 19 South. 530. Counsel discuss refused charges, but without citation of authority.

SAYRE, J. Indictment for murder; conviction of murder in the second degree.

[1, 2] The question calling for the dying declaration of deceased was supported by a proper predicate. Gerald v. State, 128 Ala. 6, 29 South. 614; Sims v. State, 139 Ala. 74, 36 South. 138, 101 Am. St. Rep. 17; McEwen v. State, 152 Ala. 38, 44 South. 619. If any part of the answer was outside the proper scope of a dying declaration, the motion to exclude was addressed to it as a whole, and hence was properly overruled. Autrey v. State, 190 Ala. 10, 67 South. 237.

[3-5] The only ground of objection taken against the state's question to the witness Jarrett was that it was leading. It was within the discretion of the court to permit a leading question. Such rulings are not revisable. Brassell v. State, 91 Ala. 45, 8 South. 679. And the assignment of a specific ground of objection to the question constituted a waiver of all other grounds. Floyd v. State, 82 Ala. 16, 2 South. 683. But additional grounds of objection were urged in the motion to exclude, and these, it seems, should be considered on their merits. The answer of the witness showed that about five minutes after defendant shot deceased, defendant said to deceased, who was lying on the ground and had said that he could not get up: "You d——d fool; stand up." This evidence as to the statement of defendant, addressed to deceased in person and so soon after defendant had inflicted a mortal wound upon him, was properly received, since the jury may have construed it as evincing a state of hostility to deceased antedating the shooting.

Smith v. State, 183 Ala. 10, 25, 62 South. 864.

[6, 7] The statement made by defendant to the witness Dock Allen, as detailed by the witness, was competent and relevant. It was an incriminatory statement, not illegal per se nor was any objection interposed to the question by which the answer was elicited. It appeared that defendant's real objection to this answer was that defendant's statement, shown thereby, was not of the res gestæ of the homicide; but, being incriminatory in nature, no rule of evidence required that it should be of the res gestæ.

[8] The question as to the competency of the witness Louise Roberts, an infant child of deceased, was for the trial court in the first instance. That court had a better opportunity to form a proper judgment than we can have on appeal, and we are not at all clear to the conclusion that the court in this case committed error when it allowed the testimony of the child to go to the jury. Wade v. State, 50 Ala. 164; Grimes v. State, 105 Ala. 86, 17 South. 184.

[9] There was no error in the ruling by which the court allowed this witness to testify that defendant frequently came to their house when the witness' father was away. This and other evidence tended to show a motive on the part of defendant. Furthermore, it served as an introduction, proper in part at least, to the testimony of the child, tending to show a threat made by defendant against deceased on the occasion of such a visit.

[10] The evidence of the defendant, testifying as a witness in his own behalf, was amply sufficient to exclude the idea that he desired to have the jury draw an inference that he was so drunk on the occasion of the killing as to be unable to form a specific intent to take life, and hence charge 4 was correctly refused to him. We think, moreover, that, even if there were any room for the proposition of his charge, defendant had the full benefit of it in the court's oral instruction to the jury.

[11] Charges 5 and 6 were well refused to defendant, for, on the hypothesis of these charges, defendant might have been convicted of manslaughter in the second degree, whereas, on the fact hypothesized, these charges required an acquittal of any offense. And so charges 11 and 15 were properly refused for the reason that the defendant might have been convicted of manslaughter in the second degree, even though the killing was not intentionally done.

[12, 13] Charges 13, 14, and 17, even though it be conceded that they might have been proper in any event, were fully covered by given charge 16. And charge 18 was bad for the reason that defendant might have been guilty of manslaughter if, as the evidence tended to show, he aimed his weapon at deceased, even though having no intention to shoot him. The statute, section 6893 of

the Code, makes it a criminal offense to present any firearm at another.

Charges 19, 20, 23, 27, and 30 were properly refused on grounds already indicated. They were, moreover, calculated to mislead the jury.

[14] It is clear that there was no error in refusing the several affirmative charges as to the several degrees of unlawful homicide. It was open to the jury, under the evidence, to convict defendant of any degree.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.