**BUFKINS v. STATE. (1 Div. 582.)**

(Court of Appeals of Alabama. Dec. 16, 1924. Rehearing Denied Jan. 20, 1925.)

**1. Criminal law 452(1)—Witness, familiar with state line, may testify in what county and state still was located.**

In prosecution for manufacturing liquor, in which defendant alleged venue in adjoining state, the location of the state line did not necessarily call for expert testimony, and a witness familiar with location could testify in what county and state it was located.

**2. Criminal law 419, 420(10), 696(2)—Testimony of witness as to location of state line, based on what surveyor told him, hearsay, and motion to exclude should be made.**

If it developed on cross-examination of state's witness, testifying to location of state line, that his knowledge was based on what surveyor told him, such information would be hearsay merely, and defendant should move to exclude such testimony.

**3. Criminal law 336—Conviction cannot be sustained in absence of proof of venue.**

Under Code 1907, § 7140, proof of venue is jurisdictional, and a conviction cannot be sustained without such proof.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Criminal law ⊕737(2) — Venue for jury where evidence tends to show crime committed within jurisdiction.**

Venue becomes a question of fact for jury, when evidence tends to show commission of crime within jurisdiction of court.

**5. Criminal law ⊕564(1)—Evidence held sufficient to prove venue.**

In prosecution for manufacturing liquor, in which defendant claimed that still was located in adjoining state, evidence *held* sufficient to prove venue of crime within this state.

**6. Criminal law ⊕1170(4)—Error, if any, in sustaining objection to question held cured by subsequent testimony.**

Error, if any, in sustaining objection to question asked by defendant's counsel *held* cured by subsequent testimony of the witness which answered such question.

**7. Criminal law ⊕1120(3)—Sustaining objection to question not error, where court not advised what was expected to be disclosed by answer.**

In prosecution for manufacturing liquor, sustaining of objection to question whether defendant was arrested at still *held* not error, where court was not advised what defendant intended to disclose through such answer, and if question had been answered in affirmative, such evidence would already have been before court.

**8. Witnesses ⊕414(2)—Witness cannot be corroborated by showing same testimony on former trial.**

A witness may not be corroborated by showing that he testified in same manner on former trial.

**9. Criminal law ⊕829(1)—Refusal to give requested instructions not reversible error, where substantially covered by given instructions.**

Under Acts 1915, p. 815, refusal to give requested instructions, even though correctly stating law, is not reversible error, if substantially covered by instructions given.

**10. Intoxicating liquors ⊕238(1) — Evidence held to justify refusal of affirmative charge.**

Evidence *held* to justify refusal of affirmative charge on trial for manufacturing liquor.

**11. Criminal law ⊕865(1)—Court may urge jury to try to reach an agreement.**

Court may urge jury to try to reach an agreement, so long as he does not suggest in which way verdict should be rendered.

**12. Criminal law ⊕857(1)—Law contemplates that jurors shall harmonize their views by discussing evidence.**

The law contemplates that jurors shall harmonize their views, if possible, by discussing the evidence.

**13. Criminal law ⊕865(1)—Instruction held not improper as coercing verdict or as intimating verdict to be reached or as invading province of jury.**

Court's instruction advising jury that they are a deliberative body and that in conferring together, if they find that majority are of one opinion, they may take such fact in consideration, *held* not improper as coercing a verdict, intimating verdict to be reached, or as invading province of jury.

Appeal from Circuit Court, Mobile County; N. D. Denson, Judge.

Otis Bufkins was convicted of manufacturing prohibited liquors, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Ex parte Bufkins, 212 Ala. 638, 103 So. 906.

McMillan & Grove, of Mobile, for appellant.

It was error for the court to charge the jury, that, if a majority were of one opinion, the jury might take that fact into consideration in their deliberations. Doty v. State, 9 Ala. App. 21, 64 So. 170; McCary v. A. G. S., 182 Ala. 597, 62 So. 18; McHan v. State, ante, p. 117, 101 So. 81; Holladay v. State, ante, p. 76, 101 So. 86. The mere presence of defendant at the still was not sufficient to connect him with its operation. Medders v. State, 19 Ala. App. 628, 99 So. 776; Biddle v. State, 19 Ala. App. 563, 99 So. 59; Seigler v. State, 19 Ala. App. 135, 95 So. 563. Defendant should have been allowed to ask if defendant had been arrested at the still on the morning in question. L. & N. v. Perkins, 165 Ala. 471, 51 So. 870, 21 Ann. Cas. 1073; 40 Cyc. 2765. Defendant should have been permitted to show by his witness Dossett what witness had testified on a former trial. Latikos v. State, 17 Ala. App. 592, 88 So. 45. It was competent to ask witness if defendant had anything to do with the still. Hunnicutt v. Higginbotham, 138 Ala. 472, 35 So. 469, 100 Am. St. Rep. 45; Steiner Bros. v. Tranum, 98 Ala. 315, 13 So. 365; Gibson v. Hatchett, 24 Ala. 201; Adler & Co. v. Pruitt, 169 Ala. 226, 53 So. 315, 32 L. R. A. (N. S.) 889; Avary v. Searcy, 50 Ala. 54.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

There was no error in the charge of the court. 1 Randall's Instr. 678; Comm. v. Tuey, 8 Cush. (Mass.) 1; State v. Egland, 23 S. D. 323, 121 N. W. 798, 138 Am. St. Rep. 1066. Where the relevancy of a question is not shown, it is not error to sustain objection thereto. 4 Michie's Ala. Dig. 294. Introduction of witness' testimony on former trial was properly denied. Bush v. State, 19 Ala. App. 650, 100 So. 307.

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

FOSTER, J. The appellant was convicted of manufacturing prohibited liquors.

The evidence for the state tended to show that one Joe Stringfellow, a deputy sheriff, together with Gillespie and Cox, federal agents, found the defendant operating a still about 4½ miles from Wilmer, in Mobile county; that they found a complete whisky still of a hundred gallons capacity sitting on a furnace and in operation, whisky running from it, and there was also a five-gallon keg of whisky and about nine fifty-gallon barrels of beer, they also found a one hundred-pound sack about two-thirds full of sugar. The witness Stringfellow also testified that the place was in Mobile county; that the defendant and Frank, Lester and Vaudie Dossett were there; that the defendant put water which he got in a bucket from a little branch in the cooling barrel; that defendant's clothes had beer slop on them; that when Cox came up the defendant tried to get over the fence. Witness for the state testified that the Mississippi line was about a quarter of a mile from the still, and that the still was in Alabama. The witness testified further "that he went with the surveyor; that witness always knew the line was there, but not exactly; that he knew the still was in Alabama by reason of the survey; that he knew where it is; that he was there when the survey was made; that he was born within about 4½ miles of that place and that he knew where the state line was; that he always knew it was in Alabama." Witness stated further "that he didn't make the survey; that the exact point of the still is based on the survey that Mr. Durant made, and without that survey he would not know exactly, but he knows it was in Alabama; that witness was with Mr. Durant when he surveyed the exact location; that Mr. Durant is the one who made the survey and witness' testimony as to the exact location of the state line is based on what Mr. Durant told him, that the still was about a quarter of a mile from the line."

The defendant's evidence tended to show that the still was in Mississippi; that Frank Dossett put up the still and was operating it; that the defendant had been there only about 10 minutes when the officers came; that the defendant did not own or have any interest in the still, or any connection whatever with its operation.

[1] The location of the state line did not necessarily call for expert testimony. The witness Stringfellow testified that he knew all the time that the location of the still was in Alabama. He also testified that it was in Mobile county. Where a witness is familiar with the location of a place he may testify to that fact, and in what county and state it is located. McDonald v. Wood, 118 Ala. 589, 24 So. 86.

[2] If on cross-examination it developed that the witness' knowledge of the exact location of the line was based on what a surveyor told him, and if he knew no more of the true location of the line than the information given him by the surveyor, such information would be hearsay merely, and the defendant should move to exclude such testimony. No such motion was made here. McDonald v. Wood, supra.

[3] Proof of venue is jurisdictional, and without such proof a conviction cannot be sustained. Code 1907, § 7140; Randolph v. State, 100 Ala. 139, 14 So. 792.

[4] Where the evidence tends to show the commission of the crime within the jurisdiction of the court, venue becomes a question of fact for the jury. Britton v. State, 15 Ala. App. 584, 74 So. 721; Pounds v. State, 15 Ala. App. 223, 73 So. 127; Powell v. State, 5 Ala. App. 75, 59 So. 530.

[5] The evidence of the witness Stringfellow was sufficient to prove venue, if believed by the jury beyond a reasonable doubt.

[6] Defendant's counsel asked defendant's witness Frank Dossett, "Did Bufkins have anything to do with that still?" Objection by the state was sustained and defendant excepted. If there was error in sustaining objection to the question, such error was cured by the subsequent testimony of the witness that the defendant had nothing to do with the still.

[7] The defendant propounded to Lester Dossett, a witness for defendant, the following question, "Was defendant Bufkins arrested there that morning?" Objection was sustained and the defendant excepted. The court was not advised what the defendant intended or expected to disclose through an answer to this question. The state witness Stringfellow had testified that he arrested the defendant there. For aught the court knew the answer to the question might have been in the affirmative. If so, this evidence was already before the court. If the defendant proposed to prove the negative, the court should have been informed of that fact. The court committed no error in declining to allow the question. 4 Mich. Dig. p. 294, § 437.

[8] It is not permissible to corroborate a witness by showing that he testified in the same manner on a former trial. Bush v. State, 211 Ala. 1, 100 So. 312; Long v. Whit, 197 Ala. 271, 72 So. 529; Jones v. State, 107 Ala. 96, 18 So. 237; McKelton v. State, 86 Ala. 594, 6 So. 301; Nichols v. Stewart, 20 Ala. 358.

[9] Refused charges A and 1 were fairly and substantially covered by the oral charge of the court. There is a statutory enactment in Alabama and the rule has long been established by an unbroken line of judicial authority that the refusal to give a requested instruction, even though it states the law correctly, does not constitute reversible error, if it is fairly and substantially covered by the instructions given. Acts

1915, p. 815; Tucker v. State, 202 Ala. 5, 79 So. 303; Hardley v. State, 202 Ala. 24, 79 So. 362; Caldwell v. State, 203 Ala. 412, 84 So. 272; Carter v. State, 205 Ala. 460, 88 So. 571; Vann v. State, 207 Ala. 152, 92 So. 182; Peagler v. State, 207 Ala. 586, 93 So. 536.

[10] The affirmative charge for the defendant was properly refused as there was sufficient evidence upon which to predicate a verdict of guilty.

The jury, after deliberating for several hours, returned to the court and the foreman reported that the jury was unable to agree upon a verdict. The court then further instructed the jury orally, that they were a deliberative body; that he did not know how they stood and did not ask to know, but that they were a deliberative body and that if the majority of them were of one opinion, the jury might take that fact into consideration in their deliberations. The defendant reserved exception to that portion of the oral instructions in which the court stated to the jury that, if a majority of them were of one opinion, the jury might take that fact into consideration in their deliberations. In determining whether the oral instruction excepted to should work a reversal of the case, the following considerations arise: (1) Did the instruction tend to coerce a verdict? (2) Did it invade the province of the jury?

This case presents no question of improper interview with the jury as was involved in the Holladay Case (Ala. App.) 101 So. 86,[1] and the cases of Driver v. Pate, 16 Ala. App. 418, 78 So. 412, and Kansas City, M. & B. R. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65. Nor do the facts bring it within the rule laid down in the Gidley Case, 19 Ala. App. 113, 95 So. 330. In the Meadows Case, 182 Ala. 51, 62 So. 737, Ann. Cas. 1915D, 663, the jury after deliberating many hours returned to the courtroom and handed the clerk a paper writing. The presiding judge then asked the jury if they had agreed upon their verdict and they said they had. Under the direction of the trial judge the clerk read the paper writing which had been handed to him by the jury, as follows: "We, the jury, agree to disagree." Whereupon the court said to the jury:

"Gentlemen, return to your room and resume your deliberations, and don't come back any more with anything like that. While I am sure that you did not mean it, yet such is absolutely in contempt of court."

In about an hour the jury returned a verdict of guilty, and saying that the defendant should suffer death. The court there said:

"The jury may have understood the trial judge, in his remarks to them when they brought in the paper writing, to say in effect: 'Go back to your jury room. It is a contempt of this court for a jury not to be able to agree upon a verdict. Don't come back into this court without a verdict.'"

And the Supreme Court there quoted with approval the following:

"There should be nothing in the intercourse of the trial judge with the jury having the least appearance of duress or coercion."

See, also, Phoenix Ins. Co. v. Moog, 81 Ala. 343, 1 So. 115; De Jarnette v. Cox, 128 Ala. 518, 29 So. 618; Swallow v. State, 20 Ala. 30. The court held in the Meadows Case that the course pursued by the trial judge was calculated to coerce a verdict, and that it probably did so. The correctness of this ruling cannot be questioned. Any attempt to coerce or drive the jurors into an agreement demands a new trial. People v. Sheldon, 156 N. Y. 268, 50 N. E. 840, 41 L. R. A. 644, 66 Am. St. Rep. 564. But the language of the learned trial judge in the instant case, unlike any of the expressions in the cases above referred to, contained not the slightest suggestion of coercion.

[11] In criminal cases it is not improper for the court to urge upon the jury the duty of trying to reach an agreement, so long as the court does not suggest which way the verdict should be rendered. 1 Randall's Instructions to Juries, § 369, p. 678, notes 41 and 42. There was nothing in the instruction suggesting or intimating the verdict the jury should render.

In People v. Richards, 1 Cal. App. 566, 82 P. 691, it was held proper for the court to charge that it is the duty of each juror to reason with his fellow jurors to the end of joining in a verdict.

In Myers v. State, 43 Fla. 500, 31 So. 275, it was held proper for the court to instruct the jury that no juror should refuse to agree from mere pride of opinion.

In State v. Egland, 23 S. D. 323, 121 N. W. 798, 139 Am. St. Rep. 1066, following Commonwealth v. Tuey, 8 Cush. (Mass.) 1, it was said:

"An instruction that the jury should examine the questions submitted to them with candor, and with a proper regard and deference to the opinions of each other; that it is their duty to decide the case if they can conscientiously do so; that in conferring together they ought to pay a proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments; that a juror, dissenting from the majority, should consider whether a doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men, equally honest, equally intelligent with himself, who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath; that a minority should seriously ask themselves whether they may not reasonably, and ought not to, doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or suf-

---

[1] Ante, p. 76.

ficiency of that evidence which fails to carry conviction to the minds of their fellows, is not erroneous as invading the province of the jury, or attempting to dictate to them the manner in which they should conduct their deliberations."

See, also, Gibson v. Minneapolis, etc., Ry. Co., 55 Minn. 177, 56 N. W. 686, 43 Am. St. Rep. 482.

A juror is a deliberative body. Each juror should hear the arguments of the other jurors and the impressions made upon them by the evidence. If there is a disparity of opinion, they should confer together, paying a proper respect to each other's opinions and listening to the arguments of their fellow jurors to the end of reaching a verdict. This can be done oftentimes alone by presentation and discussion of the contrary views. If it were otherwise, if each juror upon entering the jury room were to announce that he was for conviction or for acquittal, as the case might be, and all were not of one mind, and then each juror should refuse to hear the views of his fellow jurors, agreements would rarely be reached, mistrials would be the rule, rights of litigants would not be settled, great injustice, unnecessary delays in the administration of justice, impossibility of administering the law, disrespect and contempt for the jury system would result.

[12, 13] The law contemplates that jurors shall harmonize their views by a discussion of the evidence, if possible. It is not improper for a judge to advise a jury that they are a deliberative body, and that in conferring together, if they find that a majority are of one opinion, they may take that fact into consideration in their deliberations. There is in this instruction no coercion of a verdict, no intimation of the verdict to be reached, and no invasion of the province of the jury. The instruction was at most that the jury may consider the views of the majority. It was equally their duty to consider the views of the minority. It was the duty of the jurors to take into consideration the opinions of all. The instruction did not require that the minority should surrender their convictions and fall in with the views of the majority, but simply that they might consider those views. Law, reason, and common sense demand that a trial judge be permitted to instruct the jury that if any find themselves in the minority they may consider the views of the majority.

The exception reserved in this connection cannot avail the appellant.

The judgment of conviction is affirmed. Affirmed.

### On Rehearing.

In the case of Ashford v. McKee, 183 Ala. 620, 62 So. 879, the court approves the following quotation from 11 Encyc. Pl. & Pr. p. 304:

"The trial judge is vested with large discretion in the conduct of judicial proceedings, and he may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so consistent with their consciences. He may advise jurors to lay aside mere pride of judgment, and not to adhere to an opinion regardless of what the other jurors may say, merely through stubbornness, to examine any existing difference in a spirit of fairness and candor, and to reason together and talk over such differences and harmonize them, if possible. So, also, the court may urge as reasons for agreeing on a verdict the time and expense which a new trial would entail. But it is not proper to give an instruction censuring jurors for not agreeing with the majority."

There was no semblance of coercion in the instruction given in the instant case. The court did not intimate that the jurors should or ought to be guided or controlled by the majority. Moreover, it does not appear in the record that any injury resulted to the defendant from the instruction.

We adhere to our former opinion.

The application for rehearing is overruled.